9th Circuit No. 13-57158

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

IN RE CITIMORTGAGE, INC. HOME AFFORDABLE MODIFICATION
PROGRAM ("HAMP") LITIGATION

Appeal from the United States District Court
for the Central District of California
Case No. ML-11-2274 DSF (PLAx)
Honorable Dale S. Fischer

---

PLAINTIFFS – APPELLANTS' OPENING BRIEF

---

DAVID E. AZAR (SBN 218319)
MILBERG LLP
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, SUITE 3900
LOS ANGELES, CA 90071
TEL: (213) 617-1200
FAX: (213) 617-1975
Email: dazar@milberg.com

GARY KLEIN
KLEIN KAVANAGH COSTELLO, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114
Tel: (617) 357-5500
Fax: (617) 357-5030
Email: klein@kkcllp.com

*Counsel for Plaintiffs - Appellants*
*(additional counsel listed on signature block)*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs request oral argument because it will materially assist the Court in properly understanding the voluminous record below.  Oral argument will also help the Court to reconcile the decision in this matter with this Court's recent precedents on the proper framework for analysis of the predominance question under Federal Rule of Civil Procedure 23(b)(3), as laid out, for example, in *United Steel, Paper & Forestry, Rubber, Manufacturing Energy v. ConocoPhillips Co.*, 593 F.3d 802, 803 (9th Cir. 2010).

i

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................- 1 -

II.  JURISDICTIONAL STATEMENT ................................................- 4 -

III.  STATEMENT OF THE ISSUES ...................................................- 5 -

IV.  STATEMENT OF THE CASE .......................................................- 6 -

    A.  The TPP Agreement's Requirement For Timely Decisions ..- 7 -

    B.  Citi's Breach By Failure To Act By The MED Harmed
        Borrowers Whether Or Not They Were Entitled To
        Permanent Modifications ....................................................- 13 -

    C.  The Proposed Classes, And The Claims At Issue................- 16 -

    D.  The District Court Decision .................................................- 17 -

V.  SUMMARY OF ARGUMENT .....................................................- 21 -

VI.  ARGUMENT ................................................................................- 24 -

    A.  Standard Of Review .............................................................- 24 -

    B.  The District Court Committed Legal Error By Failing To
        Conduct A Proper Predominance Inquiry Under Rule
        23(b)(3) ................................................................................- 25 -

    C.  The District Court Committed Legal Error By Failing To
        Analyze All The Elements Of Rule 23(a) And Rule
        23(b)(3) ................................................................................- 45 -

    D.  The District Court Committed Legal Error By Failing
        Meaningfully To Analyze Whether Plaintiffs' Non-Contract
        Claims Are Amenable To Class Treatment .........................- 46 -

    E.  The District Court Committed Legal Error By Summarily
        Denying Plaintiffs' Request For Certification Under Rules
        23(b)(1) And 23(b)(2) .........................................................- 49 -

PLAINTIFFS-APPELLANTS' OPENING BRIEF

F.     In The Alternative, Remand Is Required With Instructions To Engage In More Rigorous Analysis Consistent With The Precedents Of This Court ...................................................... - 58 -

VII.   CONCLUSION ............................................................... - 59 -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ........................................................24, 38

*Adams v. Kastner*,
  92 Fed. Appx. 507 (9th Cir. 2004)..............................................36

*Alday v. Raytheon Co.*,
  619 F. Supp. 2d 726 (D. Ariz. 2008) .........................................49

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) .......................................................53

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................29

*Ashker v. Governor of Cal.*,
  No. C 09-5796 CW, 2014 U.S. Dist. LEXIS 75347 (N.D. Cal. June
  2, 2014) ........................................................................................49

*Barnes v. AT&T Pension Benefit Plan*,
  270 F.R.D. 488 (N.D. Cal. 2010)................................................49

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) .......................................................24

*Beanstalk Grp. v. AM Gen. Corp.*,
  283 F. 3d 856 (7th Cir. 2002) ......................................................36

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003) .......................................................53

*In re Bradford*,
  112 B.R. 347 (9th Cir. 1990) .......................................................42

*Calomiris v. Woods*,
727 A.2d 358 (Md. 1999) ................................................................34

*In re Citimortgage, Inc.*,
No. ML 11-2274 DSF, 2012 U.S. Dist. LEXIS 67056 (C.D. Cal.
Apr. 17, 2012) ................................................................................50

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ..............................................................29, 30

*Commonwealth v. TAP Pharm. Prods., Inc.*,
36 A.3d 1197 (Pa. Commw. Ct. 2011) ............................................47

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011) ........................................................24

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996) ..............................................................47

*In re Conseco Life Ins. Co.*,
No. C 10-02124 SI, 2011 U.S. Dist. LEXIS 146139 (N.D. Cal.
Dec. 20, 2011) ....................................................................53, 54, 55

*Cortez v. Saia Motor Freight Line, Inc.*,
399 Fed. Appx. 246 (9th Cir. 2010) ...........................................22, 44

*Corvello v. Wells Fargo Bank*, *NA*,
728 F.3d 878 (9th Cir. 2013), *amended by*, No. 11-16234, 2013
U.S. App. LEXIS 16415 (9th Cir. Sept. 23, 2013) ....................*passim*

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .......................................47

*Ealy v. Pinkerton Gov't Servs., Inc.*,
514 Fed. Appx. 299 (4th Cir. 2013) ................................................56

*Edwards v. Arthur Andersen LLP*,
44 Cal. 4th 937 (2008) ...................................................................36

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ............................................................47

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    297 F.R.D. 417 (N.D. Cal. 2013)......................................................32

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).........................................................................44

*Gintis v. Bouchard Transp. Co., Inc.*,
    596 F.3d 64 (1st Cir. 2010) (Souter, J.).........................................57

*Gooch v. Life Investors Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2011) ..........................................................56

*Grill v. BAC Home Loans Servicing LP*,
    No. 10-CV-03057-FCD/GGH, 2011 U.S. Dist. LEXIS 3771 (E.D.
    Cal. Jan. 13, 2011) ..........................................................................51

*Grosz v. Boeing Co.*,
    136 Fed. Appx. 960 (9th Cir. 2005)................................................17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014).....................................................................47

*Iannachino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008).........................................................47

*In re J.P. Morgan Chase Cash Balance Litig.*,
    242 F.R.D. 265 (S.D.N.Y. 2007) ...................................................49

*Johnson v. Meriter Health Services Employee Retirement Plan*,
    702 F.3d 364 (7th Cir. 2012) .....................................................55, 56

*In re JPMorgan Chase Mortg. Modification Litig.*,
    880 F. Supp. 2d 220 (D. Mass. 2012).............................................51

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)....................................................49

*Kelley v. Microsoft Corp.*,
    395 Fed. Appx. 431 (9th Cir. 2010)................................................28

*Laurent v. PricewaterhouseCoopers LLP*,
  No. 06-CV-2280 (JPO), 2014 U.S. Dist. LEXIS 87692 (S.D.N.Y.
  June 26, 2014) ........................................................................................55

*Lee v. Carter-Reed Co.*,
  4 A.3d 561 (N.J. 2010) .........................................................................47

*Leszczynski v. Allianz Ins.*,
  176 F.R.D. 659 (S.D. Fla. 1997) ...........................................................52

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ...............................................29, 30, 38

*McReynolds v. Merrill Lynch*,
  672 F.3d 482 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 338 (2012) ....................31

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) ..................................................................45

*Midland Pac. Bldg. Corp. v. King*,
  157 Cal. App. 4th 264 (2007) ...............................................................38

*Miller v. Am. Family Publishers*,
  663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995) ....................................47

*State ex rel. Miller v. Hydro Mag. Ltd.*,
  436 N.W.2d 617 (Iowa 1989) ...............................................................47

*Nat'l Coal. of Assn's of 7-Eleven Franchisees v. Southland Corp.*,
  No. 98-15953, 2000 U.S. App. LEXIS 864 (9th Cir. Jan. 20, 2000) ............2, 32

*Nungaray v. Litton Loan Servicing, LP*,
  200 Cal. App. 4th 1499 (2011) .............................................................51

*Ortega v. Wells Fargo Bank, N.A.*,
  No. 3:11CV01734, 2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan.
  31, 2012) ................................................................................................50

*Ortiz v. America's Servicing Co.*,
  No. EDCV 12-191 2012 U.S. Dist. LEXIS 82092, at *9 (C.D. Cal.
  June 11, 2012) ........................................................................................51

*Otsuka v. Polo Ralph Lauren Corp.*,
    251 F.R.D. 439 (N.D. Cal. 2008)....................................................29, 31

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008)..............................................................45

*In re Sandusky Wellness Center, LLC*,
    No. 14-0301, 2014 U.S. App. LEXIS 12093 (6th Cir. June 12,
    2014) ........................................................................................................56

*Savani v. Wash. Safety Mgmt. Solutions, LLC*,
    No. 1:06-2805-MBS, 2012 U.S. Dist. LEXIS 62107 (D.S.C. May
    2, 2012) ...................................................................................................49

*Schramm v. JPMorgan Chase Bank, N.A.*,
    LA CV09-09442 JAK, 2011 U.S. Dist. LEXIS 122440 (C.D. Cal.
    Oct. 19, 2011) ...................................................................................29, 31

*State v. Andrews*,
    533 A.2d 282 (Md. Ct. Spec. App. 1987)............................................47

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ..............................................................24

*Stockwell v. City & Cnty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .................................................25, 26, 28

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012), *leave to appeal denied,* No. 13-
    80000, 2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert.*
    *denied,* 134 S. Ct. 1273 (2014) ......................................................31, 46

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v.*
    *ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) .........................................................*passim*

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................30

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
    No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429 (N.D. Cal. Apr.
    2, 2012) ...................................................................................................34

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)....................................................................24, 54

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .............................................................48

*Wang v. Chinese Daily News*,
    737 F.3d 538 (9th Cir. 2013) ...............................................................54

*In re Whirlpool Corp. Front Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) .................30

*Wigod v. Wells Fargo Bank*, *NA*,
    673 F.3d 547 (7th Cir. 2012) ...............................................................33

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .............................................................29

*Young v. Wells Fargo Bank, N.A.*,
    717 F.3d 224 (1st Cir. 2013).................................................9, 27, 33

**Statutes**

28 U.S.C. § 1332(d) ....................................................................................4

CCRAA ....................................................................................19, 46

Consumer Credit Reporting Agencies Act ............................................16

Federal Rules of Civil Procedure, Rule 23 .......................................*passim*

Federal Rules of Civil Procedure, Rule 10b-5 .......................................47

**Other Authorities**

Restatement (Second) of Contracts, §§ 84, 246 (1981)..........................37

Restatement (Second) of Contracts § 211 (1981)..................................34

## I.     INTRODUCTION

This is an interlocutory appeal, by leave granted pursuant to Federal Rule of Civil Procedure ("Rule") 23(f), of a decision denying class certification in a multidistrict litigation proceeding. Plaintiffs seek certification of various state law claims arising in eleven cases under the law of eight jurisdictions.  The claims share a principal unifying characteristic – in each putative class member's case, Citi ignored its contractual obligation to provide a timely decision to a homeowner seeking a mortgage modification under the federal government's Home Affordable Modification Program.  Indeed, the District Court correctly recognized that "the common question of law is whether Citi breached the [form contract] by failing to provide a permanent modification or a written denial" by the contractual deadline and that "[r]esolution of this question potentially would 'resolve an issue that is central to the validity of each one of the claims in one stroke.'"  Order Denying Plaintiffs' Motion for Class Certification ("Order") at 6 (ER9).

Citi's failure to honor its agreements has led to the assessment of hundreds of millions of dollars in unwarranted delinquency charges, has resulted in catastrophic credit reporting problems, and has undermined the ability of the affected homeowners to resolve their mortgage defaults. Citi's behavior was

designed to line its own pockets at the expense of financially struggling families seeking promised and much-needed relief from the terms of onerous mortgages.

It is undisputed that each of the more than 40,000 homeowners in the eight proposed statewide classes (including the Plaintiffs) received a TPP Agreement and made the required payments, and that Citi failed to provide either a modification or a denial by the deadline set forth in the contract. Indeed, the tragic situations of homeowners left in limbo by unfulfilled promises associated with TPP Agreements are already familiar to this court.  In *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013), *amended by*, No. 11-16234, 2013 U.S. App. LEXIS 16415 (9th Cir. Sept. 23, 2013), the Court determined that the TPP Agreement is an enforceable form contract and concluded that "injustice . . . would result" if servicers were allowed "to keep borrowers' trial payments without fulfilling any obligations in return." 728 F.3d at 884.

The District Court failed to tackle this case as one involving breach of straightforward time deadlines in a form contract.  The TPP Agreement can be interpreted, for the proposed classes, based on common principles of contractual construction, under the law of each state where claims arose.  *See Nat'l Coal. of Assn's of 7-Eleven Franchisees v. Southland Corp.*, No. 98-15953, 2000 U.S. App. LEXIS 864, at *9 (9th Cir. Jan. 20, 2000) (interpretation of uniform contract

PLAINTIFFS-APPELLANTS' OPENING BRIEF

provision is a question of law that can and should be resolved for all class members in a single action).  As this Court has recognized, the District Court cannot properly skip past the potential common answers to a common question, without evaluation, and assume that those questions will be decided against the Plaintiffs. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 803 (9th Cir. 2010) ("*United Steel*").

If the District Court had performed the requisite inquiry here, it would have found that under each state law at issue, common questions predominate, because state law provides black letter principles to answer the common question for the class.  For example, Citi argued that certification is precluded because individual inquiry is required to determine if its contractual deadline was extended by unilateral action it took to extend its deadlines (most often after the deadline had already passed). The District Court failed to analyze whether common state law principles governing contracts, such as the statute of frauds or the parol evidence rule, make that individual evaluation unnecessary.

The District Court's consideration of class certification comprises less than four pages of an unpublished memorandum.  The court fails to consider meaningfully the required elements of class certification, not only for the class's contract claims, but also for the other state law claims consolidated in this matter.

- 3 -

By brushing aside established legal principles that would allow the claims at issue to be decided efficiently for the proposed classes, the District Court gives short shrift to tens of thousands of homeowners around the country who have been or are now at risk, literally and figuratively, of being left out in the cold.

## II.    JURISDICTIONAL STATEMENT

This action was properly before the District Court based on a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML") dated October 6, 2011. ER 624-627.  Jurisdiction exists because this action is between citizens of different states; at least one member of the classes of Plaintiffs is a citizen of a state different from the Defendant; a class action has been pled; the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and there are 100 or more members in the proposed classes.  28 U.S.C. § 1332(d).

Plaintiffs-Appellants ("Plaintiffs") appeal from an order denying class certification entered by the Honorable Dale S. Fischer in the United States District Court for the Central District of California on October 7, 2013.  ER 3-12.  Pursuant to Rule 23(f), this Court, on December 23, 2013, granted Plaintiffs' request for leave to appeal the District Court's order. ER1-2

- 4 -

## III. STATEMENT OF THE ISSUES

1. Whether black letter legal principles governing contract interpretation, if properly evaluated on the merits, could potentially supply common class-wide answers to the question of whether the TPP Agreement establishes a deadline for Citi's performance, and therefore provide a basis for a finding that the predominance requirement of Rule 23(b)(3) is met.

2. Whether the District Court, in concluding that individual factual questions do not predominate under Rule 23(b)(3), improperly failed to consider the availability of data sources that provide potential common factual answers to the common question it identified under Rule 23(a)(2).

3. Whether the District Court properly considered potential individuating issues about damages as relevant to the predominance inquiry despite binding precedent to the contrary and despite evidence that damages questions are amenable to resolution by formula.

4. Whether the District Court improperly disregarded arguments for certification under Rule 23(b)(1) and (b)(2) and for certification of non-contract state law claims made for the eight proposed statewide classes.

5. Whether the District Court made sufficient findings and conclusions to satisfy the requirement of "rigorous analysis" for the state law classes at issue in

this multidistrict litigation, and whether its findings and conclusions were sufficient for this Court's review.

## IV. STATEMENT OF THE CASE

During the class period, CitiMortgage Inc. ("Citi") sent form TPP Agreements[1] to tens of thousands of financially struggling homeowners. The TPP Agreements—by their express language—promised that Citi would evaluate each homeowner for a permanent mortgage modification during a defined time period and render a "yes" or "no" decision by a specific deadline (the "Modification Effective Date" or "MED"). During this defined period, which lasted, in all cases, between 90 and 150 days, Citi had the opportunity to verify whether the homeowner met program requirements. In turn, the homeowner was to make trial payments demonstrating their ability and willingness to perform under a modified loan. For borrowers who failed either test, Citi was obligated under the TPP to send a denial by the deadline.

---

[1] Although Citi argues that it used multiple versions of the TPP form over the relevant time period, there is no dispute that each version of the TPP is a form contract and contains an explicit deadline for Citi to perform. Defendant argued that certification should be denied because the forms contain materially different language, yet they have not properly demonstrated that any differences in the forms it used are material. Nor has it explained why, if there are material differences, those differences cannot be addressed by subclasses so that the relevant contractual principles can be decided on a class-wide basis. Plaintiffs' Reply in Support of Motion for Class Certification ("Reply") at 6 (ER100).

Plaintiffs' contract claims, for all class members, are based on the fact that Citi breached by failing to act by the contractual deadline even though the class members honored their obligation to make contractually required payments. Citi's defenses are based either on an assertion that it unilaterally extended its own deadline (an argument that is resolvable under the statute of frauds and parol evidence rule for all class members) or that the homeowners, in some cases, never qualified for HAMP permanent modifications for reasons other than failure to make payment. For each putative class member, Citi did not make a determination that the borrower did or did not qualify until months or years after the MED. Under Plaintiffs' theory, Citi's late decisions breached the form contract, and caused injury, whether it ultimately granted or denied the modification.

### A.    The TPP Agreement's Requirement For Timely Decisions

In 2009, the Department of the Treasury created the Home Affordable Modification Program ("HAMP") to address the country's burgeoning foreclosure crisis. The Treasury Department allotted $75 billion to pay incentives to servicers to modify loans. Citi entered into a "Servicer Participation Agreement" with the Treasury Department on April 13, 2009, committing to participate in HAMP and to follow the rules of the program in exchange for incentive payments. As part of its participation in HAMP, Citi entered into TPP Agreements with homeowners,

PLAINTIFFS-APPELLANTS' OPENING BRIEF

including the Plaintiffs and putative class members here.

The TPP Agreement is a contract between a homeowner and servicer that requires the homeowner to make designated monthly payments for a three or four month period to demonstrate an ability to make steady payments before the original loan documents are permanently modified.[2]  The contract provides Citi with the opportunity, *during that three or four month period*, to evaluate the homeowner's eligibility for a permanent loan modification using financial information that the homeowner supplies upon Citi's request.  *See Corvello*, 728 F.3d at 880 (citing Treasury Guideline Supplemental Directive 09–01 ("SD 09-01")).

The promise Citi breached is expressly set forth in every TPP Agreement, beginning with its very first sentence:

> If I am in compliance with this Trial Period Plan (the "Plan"), and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3 . . . .

TPP at p.1 (ER284).  *See also Corvello*, 728 F.3d at 881 (citing similar language in Wells Fargo's form TPP Agreement).  The "Trial Period" is expressly defined on

---

[2] While Citi asserts that the TPP form was drafted by the Department of the Treasury as part of its HAMP guidelines, rather than by Citi, Citi chose to use the proposed form without alteration. Certainly, borrowers had no role in drafting the TPP.

PLAINTIFFS-APPELLANTS' OPENING BRIEF

page 2 as "the period (the 'Trial Period') commencing on the Trial Period Effective Date and ending on . . . .: (i) the first day of the month following the month in which the last Trial Period Payment is due (the 'Modification Effective Date')".[3] TPP at p.2 (ER285).

Because the TPP defines the "Modification Effective Date" as "the first day of the month following the month in which the last Trial Period Payment is due" and specifies due dates and payment amounts for either three or four monthly Trial Period Payments, the MED can be easily calculated from the final payment date provided in the TPP Agreement (and is uniformly a datapoint that is present in Citi's data records). *See generally* Report of Dr. Ian Ayres ("Ayres Report"), ¶¶ 61, 72 & n.118 (ER159-160, ER164-166, ER164).

Citi promised to act – either by providing a permanent modification *or* by informing the homeowner that he or she did not qualify – no later than the required specific date certain: the MED. Under the TPP Agreement, there is no third option to continue collecting modified payments during an indefinite limbo period while declining to grant or deny a permanent modification. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 235 (1st Cir. 2013) ("defendants' interpretation would permit

---

[3] The Trial Period may end earlier if it is properly terminated, an issue that is not relevant to this case where decisions were made for all class members long after the MED.

them to exercise an unfettered right to withhold a permanent modification offer for an uncertain period of time after the Modification Effective Date has passed, thereby erasing the benefits to the plaintiff of her compliance with the TPP"). Underscoring this point, the TPP Agreement typically provides that "TIME IS OF THE ESSENCE." TPP at p. 2, § 2A (ER285) (emphasis in original).

The TPP Agreement also expressly requires Citi to evaluate the truth of the homeowner's representations by the MED: "[i]f prior to the Modification Effective Date . . . the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate." TPP at p. 2, § 2.F.(iii) (ER285).[4] The plain meaning of this provision is consistent with the purpose of a specifically time-delimited Trial Period, *i.e.*, it establishes that the MED is the end of a defined and finite period available for Citi to complete its evaluation of the homeowner's credentials and documentary support for a permanent modification. The language of provision 2.F.(iii) further makes clear that Citi is required to make a decision by the MED even if that decision is "no" or "no, because you didn't send us the required documents." The agreement says, in effect, if we have not concluded that your representations are

---

[4] The Section 1 representation ("I am providing or have provided documentation for all income that I receive.") is the only provision in the TPP Agreement that commits the homeowner to providing documentation to Citi to support the modification.

false by the MED (and you have met your payment obligations), the Loan Documents *will be modified. See Corvello*, 728 F.3d at 884-85 ("The TPP gives the bank a chance, after borrowers submit the completed TPP, to notify them if they do not qualify . . . . [The servicer's] own failure to fulfill the notification obligation does not deprive plaintiffs of the benefits of their agreement.")  As discussed below, the appropriate construction of this key language is one of several common questions that are logically required in all cases and for all class members, and which, if decided in favor of Plaintiffs' theory, demonstrate that the predominance requirement is met.

And again, while final resolution of the common question is not required at the class certification stage of the case, it is noteworthy that the Department of the Treasury expected servicers to act by the MED: "[t]he servicer *must* consider the Trial Period Plan to have expired if the borrower has not submitted the required documentation by the end of the trial period." U.S. Treasury Dept., Supplemental Directive 09-08 (ER277).  Because the "end of the trial period" is, by definition, the MED in all cases, this is consistent with Plaintiffs' view.

Citi's widespread and pervasive failures to timely undertake its responsibilities related to the HAMP trial process are well documented.  For example, Treasury's quarterly servicer reporting shows that between 25 percent

and 49 percent of Citi's active TPP Agreements had lasted six months or longer as

of each end-of-quarter date from December 2010 to December 2012.[5] Citi's

performance was the worst among the ten largest servicers in each quarter from

December 2010 to September 2011.[6] Citi was also among the three worst of the

large service providers in other quarters from December 2011 to December 2012.[7]

It is undisputed that each of the homeowners in the eight proposed statewide

classes (including the Plaintiffs) received a TPP Agreement and made the required

payments, and that Citi failed to provide either a modification or a denial by the

MED. Whether Citi was required to meet this deadline is the core common

---

[5] U.S. Department of Treasury, *Making Home Affordable Program Performance Report through April 2011* (June 9, 2011), at 22, 37; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through January 2012* (Mar. 2, 2012), at 26, 39; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through October 2012* (Dec. 7, 2012), at 28, 43; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through January 2013* (Mar. 8, 2013), at 28, 43. *See* http://www.treasury.gov/initiatives/financial-stability/reports/Pages/Making-Home-Affordable-Program-Performance-Report.aspx.

[6] U.S. Department of Treasury, *Making Home Affordable Program Performance Report through April 2011* (June 9, 2011), at 18-36; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through January 2012* (Mar. 2, 2012), at 22-38.

[7] U.S. Department of Treasury, *Making Home Affordable Program Performance Report through January 2012* (Mar. 2, 2012), at 22-38; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through October 2012* (Dec. 7, 2012), at 26-42; U.S. Department of Treasury, *Making Home Affordable Program Performance Report through January 2013* (Mar. 8, 2013) at 25-42.

question in this case and predominates over any individual questions for the reasons discussed below.

### B. Citi's Breach By Failure To Act By The MED Harmed Borrowers Whether Or Not They Were Entitled To Permanent Modifications

When Citi did not timely perform, it prolonged delinquencies and charged homeowners additional fees, it damaged homeowners' credit reports and left homeowners in limbo about a decision essential to keeping a roof over their heads. The harm associated with failing to provide a timely permanent modification is obvious, but untimely denial was also a breach of the TPP that had horrific consequences for homeowners. First, and most importantly, fees and costs were placed on the account exacerbating the default that arose during the period that Citi accepted monthly TPP payments that were less than the full amount then due on the mortgage. Delay thus created *and exacerbated* delinquency amounts far beyond the ability of economically stressed homeowners to resolve. At the same time, Citi failed to provide credit reporting that accurately reflected trial payments made pursuant to the TPP Agreements.

Also crucially, timely denials would have allowed homeowners to appeal their decisions, to apply for other foreclosure alternatives offered under the Making

- 13 -

Home Affordable Program[8] and to pursue other avenues of resolution, including using the money they put toward TPP payments to fund bankruptcy plans, relocation costs, short sales, or other means of curing their defaults. Homeowners' options, including alternatives under the Making Home Affordable Program, become fewer and harder to access as time passed and the outstanding mortgage balance grew.

In addition, failing to make timely decisions prevented Citi from making accurate decisions on whether to grant permanent modifications. Among other things, borrower documents submitted at the outset of the Trial Period would become stale and be rendered unusable under HAMP rules. As Citi acknowledges, when this occurred, borrowers received requests for documents that they had already submitted, which effectively (and improperly) restarted the process from the beginning. ER264-266. The existence of properly submitted documents that Citi permitted to become stale by inaction also led to pretextual denials.[9]

---

[8] *See Corvello*, 728 F.3d at 881 ("If a borrower does not qualify for the HAMP program, the servicer must not only alert the borrower, but must consider alternatives. The servicer should 'promptly communicate that [ineligibility] determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative.'") (citing SD 09-01).

[9] Plaintiff Karen Grover's situation is typical and illustrative of the consequences of Citi's systemic underwriting delays. Ms. Grover was current on her loan when she applied for a HAMP modification due to a loss of employment income. ER288, 290. Ms. Grover was initially approved in August, 2009, for a three-month TPP to

begin October 1, 2009. ER284-286. Citi received all of the required documentation, including a signed and completed Request for Transcript of Tax Return ("4506-T") and her first TPP payment by October 1, 2009. ER240-243 at 237:05-240:11. At that point Citi told her that it would notify her if further information was necessary "within approximately 7 days." *Id*. Then, for nine months, Citi failed to evaluate Ms. Grover for a permanent HAMP modification. ER243-245 at 240:20-242:03. During that period, Ms. Grover paid the TPP amount every month, ER213-215, but received collection notices demanding past due amounts and delinquency fees. ER293-295.

Because of Citi's delay by more than 60 days, Ms. Grover's 4506-T could no longer be used to obtain a tax transcript from the IRS by operation of law. ER303. In May, 2010, Citi notified Ms. Grover that she had not provided a 4506-T, ignoring that it had let the submitted form expire. ER297. Citi then requested her most recent bank statements and other documents despite Ms. Grover having submitted them at the outset. ER247-251 at 244:25 – 248:06. As Citi was aware, when it failed to timely underwrite the permanent modification, a borrower's documents would become outdated by Citi's conduct, thereby uniformly providing a pretextual basis for denial. ER264-266 at 217:19 – 219:02.

Indeed, pretextual denial is exactly what happened to Ms. Grover. By the tenth month after Ms. Grover first provided the documents Citi required, a Citi underwriter had yet to begin evaluating Ms. Grover for a permanent modification under HAMP. ER252-253 at 249:19-250:02. In July, 2010, an underwriter failed the loan and Citi sent a decline letter, which stated that the loan was denied due to Ms. Grover's failure to provide the requested documents. ER258-259 at 109:22-110:03; ER299-300. Although it was not explained until deposition in this matter, the purported "missing documents" included the 4506-T which had again expired because the May 2010 submission was more than 60-days old. Citi also asserted that the original income documentation had expired by that time. ER247-251 at 244:25 to 248:6.

At the end of the process, Citi demanded more than $17,000 from Ms. Grover to cure her "default". ER305-306. Under Citi's flawed administration of her HAMP modification process, she went from being current on her mortgage to being hopelessly behind. In addition to a lump sum of past due interest, Citi added fees and costs to her account that resulted from its own failure to timely evaluate the loan for permanent modification. *See id.*

- 15 -

**C.    The Proposed Classes, And The Claims At Issue**

Plaintiffs seek certification of eight statewide classes of borrowers (for residents of California, Florida, Illinois, Iowa, Maryland, Massachusetts, New Jersey and Pennsylvania) whose home mortgage loans have been serviced by Citi and who, since April 13, 2009, have entered into a HAMP TPP Agreement with Citi and made all payments required by their TPP Agreement ("HAMP TPP Classes"). Excluded from the HAMP TPP Classes are borrowers to whom Citi *timely* (*i.e.*, at or before the end of the Trial Period defined in borrower's TPP Agreement) tendered either: a Home Affordable Modification Agreement that complied with HAMP rules; or a written denial of eligibility consistent with the terms of the TPP. Plaintiffs' Memorandum of Points and Authorities in Support of Class Certification and Appointment of Class Counsel ("Memo") at 4 (ER831).[10] In other words, excluded from the class are borrowers for whom Citi actually performed as it promised it would under the form contract.

Plaintiffs seek certification of claims for breach of contract, promissory estoppel and breach of the implied covenant of good faith and fair dealing under the law of each of the eight states for which class certification is sought, together with certification of claims under state consumer protection laws (six states), the

---

[10] Plaintiffs have omitted here certain other exclusions to the class that are not germane to this appeal.

- 16 -

Consumer Credit Reporting Agencies Act ("CCRAA") (California), and state fair

debt collection laws (Maryland and Iowa).[11]

### D.    The District Court Decision

The District Court's nine page October 7, 2013 memorandum denies the

Plaintiffs' motion for class certification and three pending motions to strike expert

evidence.[12]  Given the brevity of the District Court's class certification analysis,

the opinion fails to adequately address many of the elements of Rule 23 and does

not tackle the core legal issues raised by Plaintiffs' claims.

The court first found that the Plaintiffs satisfy the commonality requirement

of Rule 23(a)(2). Most importantly, the Opinion recognizes that a common

question unifies the classes, identified as follows:  "[T]he common question of law

is whether Citi breached the TPP by failing to provide a permanent modification or

a written denial by the Modification Effective Date (MED)." Order at 6 (ER9). The

District Court holds that "[r]esolution of this question potentially would 'resolve an

issue that is central to the validity of each one of the claims in one stroke.'" Order

at 6 (ER9). The District Court notes that Citi conceded that this was a common

question. Order at 6 n.4 (ER9).

---

[11] Plaintiffs presented evidence to the District Court on the uniformity of the laws of the states in question. ER269-272, ER84-86.

[12] For purposes of the present appeal, only the District Court's class certification decision is at issue.

Without addressing other factors relevant under Rule 23(a) (numerosity, typicality, adequacy), the District Court goes on to deny certification under Rule 23(b)(1), (b)(2) and (b)(3).[13]

As to Rule 23(b)(1), the court faults Plaintiffs for insufficiently developing their arguments under this section for certification without substantively addressing the argument that Plaintiffs did make (despite limitations on the briefing imposed by the District Court). *See* n.21, *infra*. Order at 6 (ER9).

In denying certification under Rule 23(b)(2), the court states that determining whether Citi was required to act by the MED is not enough to determine what injunctive relief each class member deserves. Order at 7 (ER10). The court's decision fails to recognize that making that determination (whether the TPP Agreement imposes a duty on Citi to act by the MED) is "declaratory relief . . . respecting the class as a whole" within the meaning of the Rule. The court further fails to address Plaintiffs' argument that improper interest, fees and charges can be determined from Citi's account records using an algorithm, making individualized inquiry unnecessary to craft relief incidental to the proposed

---

[13] Since the District Court need only reach Rule 23(b) requirements if the elements of Rule 23(a) are met, *see Grosz v. Boeing Co*., 136 Fed. Appx. 960, 962 (9th Cir. 2005), it is fair to assume that the court deemed the Plaintiffs' extensive showing on the balance of Rule 23(a) issues sufficient. Plaintiffs' Reply in Support of Motion for Class Certification ("Reply") (ER819-855),

- 18 -

declaratory judgment.

With respect to the Rule 23(b)(3) issues, the District Court evaluated only the predominance requirement. The District Court stated, without relevant explanation:

> [D]etermination of the deadline by which Citi was required to provide either a permanent modification or a written denial cannot be made simply by identifying the [Modification Effective Date] as stated in the TPP. The deadline may also have been affected by the parties' course of conduct, changes in income, inaccurately or incompletely reported income, oral and written representations regarding documentation still needed and other modification options, applicable Treasury Directives, and other considerations.

Order at 8 (ER11). The court also notes potential individuating issues with respect to damages as a factor precluding predominance, despite binding precedent that makes questions related to damages irrelevant to the predominance inquiry. Order at 8-9 (ER11-12). The District Court simply assumes that the contract requires evaluation of an "incredible variety of individual issues." Order at 9 (ER12).

The Opinion provides limited analysis of only a portion of Plaintiffs' non-contract state law claims, stating without analysis of the elements of these claims:

> These same heterogeneity problems plague Plaintiffs' proposed promissory estoppel, implied covenant, and consumer protection classes. Individual representations made by Citi to individual plaintiffs are critically important in determining whether, under the state law of each proposed class, for example, reliance was reasonable, whether a reasonable consumer would be

- 19 -

likely to be deceived, and whether the promise was clear.

Order at 8 (ER11). Among other things, the court nowhere cites anything in the record to show that "individual representations" were made by Citi, whether "reasonable reliance" is an element of the relevant claims, including, for example, under state consumer protection laws, and whether the promises contained in the TPP Agreement were insufficiently "clear." Moreover, the Opinion entirely fails to discuss certification of the Plaintiffs' CCRAA and state debt collection claims.

The court never reaches the superiority argument under Rule 23(b)(3) and thus fails to recognize the continued burdens that individual litigation on these issues will continue to place on the state and federal courts. Equally important, the District Court's decision ignores the superiority consideration that many homeowners across the country will have suffered the consequences of wholesale breaches of their TPP Agreements, and be left abandoned by the court system, because the expense of hiring a lawyer to pursue an individual claim would be an impossible drain on already overburdened family finances. Indeed, these circumstances fall squarely under the *raison d'etre* underlying Rule 23, because class certification here would afford meaningful redress to tens of thousands of homeowners who otherwise have no practical means of achieving it.

## V.    SUMMARY OF ARGUMENT

In denying class certification, the District Court incorrectly ignored or assumed the failure of the legal and factual arguments permitting a class-wide answer to the common question it identified, conducted only the most cursory inquiry into most of the remaining requirements of Rule 23 and neglected to consider seriously the certifiability of Plaintiffs' non-contract claims. These are errors of law, and are *per se* abuses of discretion.

The District Court correctly recognized that "the common question of law is whether Citi breached the TPP Agreement by failing to provide a permanent modification or a written denial by the Modification Effective Date (MED)." Order at 6 (ER9). Nevertheless, in it its decision on the predominance requirement of Rule 23(b)(3), the District Court *assumed* that Plaintiffs would fail in their primary assertion (that the TPP Agreements require action by a specific date). A district court abuses its discretion when "it assume[s], for the purpose of Federal Rule of Civil Procedure 23 certification analysis and without any separate inquiry into the merits, that plaintiffs' legal theory w[ill] fail." *United Steel*, 593 F.3d at 803. *See* section IV.B.1*, infra.* The District Court fundamentally misconceived the predominance inquiry required under binding precedent, including by finding that

individual questions of damages are relevant to that inquiry. *See* section IV.B.2, *infra*.

The District Court also omitted consideration of principles governing interpretation or enforcement of contracts, clearly presented in the record below and essential to determining whether Plaintiffs' claims could proceed efficiently on a class-wide basis. Plaintiffs asserted that the TPP Agreements could not be modified except through a bilateral written agreement for two related reasons: first, because the TPP Agreements are integrated agreements, and second because the statute of frauds applies. Plaintiffs also argued that Citi cannot assert that homeowners failed to meet conditions or no longer qualified once the MED passed for two reasons: first, because the plain language of the TPP Agreement created an estoppel or waiver, and second because Citi continued to accept payments from borrowers after the deadline. Again, the District Court neither addressed the merits of these arguments nor considered that they raise legal questions that can be answered on a common basis for all class members. *Id. See* section IV.B.3*, infra.* Instead, the District Court summarily hypothesizes individuating questions which would either be obviated by proper contractual construction or are wholly irrelevant to Plaintiffs' theory of breach. *See* section IV.B.4*, infra.* In addition, the District Court ignored evidence, sourced in Citi's own databases, that there are

common factual answers to the identified common question.  *See* section IV.B.5, *infra.*

Apart from predominance, the District Court opinion addresses only one of the four requirements of Rule 23(a), ignoring numerosity, typicality, adequacy and fails to analyze the superiority requirement of Rule 23(b)(3).  This falls short of the requirement of rigorous analysis.  *See Cortez v. Saia Motor Freight Line, Inc.,* 399 Fed. Appx. 246 (9th Cir. 2010) (holding that the district court erred in denying class certification when it failed to explain its reasons for denial and did not discuss all prongs of Rule 23(a) and (b)).  Plaintiffs made an extensive showing that they met the burden on each of these elements, but the District Court made no findings. *See* section IV.C, *infra.*

The District Court also committed legal error by failing to analyze whether Plaintiffs' non-contract claims are amenable to class treatment.  The court does little more than speculate on potential individualized issues without first establishing that those issues are relevant to the claims at issue.  *See* section IV.D, *infra.*

The District Court failed to offer any meaningful analysis of certification under Rule 23(b)(1) or 23(b)(2).  Order at 6-7 (ER9-10). Plaintiffs continue to assert that certification is appropriate under Rule 23 (b)(1) because Citi (and other

- 23 -

servicers) are being held to incompatible standards of conduct by different courts and different judges and under Rule 23 (b)(2) because Plaintiffs seek a declaration as to the meaning and legal effect of the TPP Agreement that would be applicable to all class members and form a prerequisite for further relief.  *See* section IV.E, *infra.*  At a minimum, remand is required for more extensive finding and conclusions in the District Court.  *See* section IV.F, *infra.*

## VI.    ARGUMENT

### A.    Standard Of Review

The standard of review for a district court's denial of a motion for class certification is abuse of discretion.  An abuse of discretion occurs when the district court, in making a discretionary ruling, "relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1018 (9th Cir. 2011) (citing *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1171 (9th Cir. 2010)).  A legal error is deemed a *per se* abuse of discretion.  *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1175 (9th Cir. 2011).  *See also Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 712 (9th Cir. 2010).  A district court's findings of fact should be reversed if they are "(1) illogical, (2) implausible, or (3) without 'support in inferences that may be drawn from the record.'" *Abdullah v. U.S. Sec. Assocs.,*

- 24 -

*Inc.,* 731 F.3d 952, 956 (9th Cir. 2013) (quoting *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009)).

Here, the District Court made both legal and factual errors that justify reversal and/or remand.

### B.    The District Court Committed Legal Error By Failing To Conduct A Proper Predominance Inquiry Under Rule 23(b)(3)

#### 1.    The District Court Erred By Failing To Evaluate Antecedent Common Legal Questions That Would Obviate The Need For Individualized Inquiry

District courts must perform a "rigorous analysis" when deciding whether the requirements of Rule 23 have been satisfied and warrant class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (rigorous analysis of class certification prerequisites is required, even when such analysis touches on the merits). Rigorous analysis includes consideration of merits questions to the extent such questions are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013)). In finding that Plaintiffs did not satisfy the predominance requirement of Rule 23(b)(3), the District Court omitted consideration of contract law arguments, clearly presented in the record

- 25 -

below and essential to determining whether Plaintiffs' claims could proceed efficiently on a class-wide basis.

Evaluating whether class members share common questions begins with identifying "the elements of the class member[s'] case-in-chief." *Stockwell,* 749 F.3d at 1114. The court must start from the legal theory or theories asserted by plaintiffs. A district court abuses its discretion when "it assume[s], for the purpose of Federal Rule of Civil Procedure 23 certification analysis and without any separate inquiry into the merits, that plaintiffs' legal theory w[ill] fail." *United Steel,* 593 F.3d at 803.

In *United Steel*, union and representative plaintiffs sought certification of a class of oil workers alleging violations of California law requiring certain meal breaks. Central to the merits of that dispute was the question of whether the nature of the oil workers' employment conditions rendered their meal breaks "on-duty." While the district court recognized the issue of the company's policy concerning meal breaks as subject to class-wide treatment, it nonetheless denied certification on predominance grounds:

> [T]here c[ould] be no assurances that [plaintiffs] w[ould] prevail on [their "on duty"] theory. And if plaintiffs did *not* prevail on this theory, the district court reasoned, the inquiry would then shift to whether plaintiffs *actually* missed meal breaks, and the Court w[ould] be faced with a case . . . requiring individualized trials on each class

> member's meal period claims, thus making a class action . . . not . . .
> the superior method of resolving this suit.

*United Steel*, 593 F.3d at 808 (quoting the lower court's opinion, alterations in

original, internal quotations omitted). The Ninth Circuit rejected this methodology

because instead of asking whether common questions predominated under

plaintiffs' proffered legal theory, the lower court muddled the predominance

inquiry by including individualized questions that would be necessitated only if the

on-duty theory failed.  *United Steel*, 593 F.3d at 808. *See also Stockwell*, 749 F.3d

at 1117 (predominance analysis must take place in light of correct identification of

the possible answers to "logically prior, common question[s]") .

The District Court's opinion here suffers from a similar error.  In analyzing

commonality, the District Court correctly recognized that "the common question of

law is whether Citi breached the TPP Agreement by failing to provide a permanent

modification or a written denial by the Modification Effective Date (MED)" and

that "[r]esolution of this question potentially would 'resolve an issue that is central

to the validity of each one of the claims in one stroke.'"  Order at 6 (ER9).

Nevertheless, the District Court's predominance analysis is based on the adoption

of Citi's view that homeowners were *not* owed a decision by the MED set forth in

the TPP Agreement.  While the common legal question need not be decided on the

merits to resolve this appeal, it is relevant that Citi's position was forcefully

- 27 -

rejected, as a matter of law, by another court of appeals construing a virtually identical TPP contract. "[D]efendants' interpretation would permit them to exercise an unfettered right to withhold a permanent modification offer for an uncertain period of time after the modification effective date has passed, thereby erasing the benefits to the plaintiff of her compliance with the TPP." *Young*, 717 F.3d at 235.

The District Court simply concludes that contract remedies require evaluation of an "incredible variety of individual issues." Order at 9 (ER12). The District Court reaches this conclusion without addressing the merits of the class-wide legal arguments, governed by black letter principles of contractual interpretation, that Plaintiffs made to support the conclusion that the MED is a contractual deadline and/or to establish that individual inquiry is inappropriate or unnecessary.

Plaintiffs' proposed class-wide principles for interpreting the meaning of the contract—pursuant to uniformly applicable legal principles, as described below—present additional common questions to support a finding of predominance. As this Court held in *United Steel,* the District Court cannot properly take for granted, without appropriate findings or legal conclusions, that the answers would run against Plaintiffs in order to find the absence of predominance. *See also Kelley v.*

- 28 -

*Microsoft Corp.*, 395 Fed. Appx. 431, 432 (9th Cir. 2010) (finding the district court erred in its predominance analysis when it "failed to consider . . . questions of law or fact common to the Express Upgrade class members, despite identifying several such questions in the Rule 23(a)(2) commonality analysis"); *Stockwell,* 749 F.3d at 1116 (remanding the denial of class certification where the district court inappropriately assumed the conclusion of relevant predicate merits questions in the commonality inquiry).

For the purpose of predominance, the District Court should accept Plaintiffs' legal theory of liability and consider the predominating aspects of common issues under that theory, rather than positing what individual issues might arise if that legal theory is not borne out.

> **2.      The District Court Applied The Wrong Standards To Predominance Including By Considering The Possibility Of Individualized Damages**

The predominance inquiry is intended to determine whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Courts should weigh or balance the common questions of law and fact against the necessity for individual inquiry. *Schramm v. JPMorgan*

PLAINTIFFS-APPELLANTS' OPENING BRIEF

*Chase Bank, N.A.*, LA CV09-09442 JAK, 2011 U.S. Dist. LEXIS 122440, at *18 (C.D. Cal. Oct. 19, 2011) ("Determining whether common questions predominate requires the weighing of the common questions in the case against the individualized questions.")  This is true especially when answers to the common question would resolve significant issues in the case.  *See Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (individual questions that arise only after significant common questions of law and fact have been answered do not defeat predominance).

The existence of potential individual damages like those the District Court identifies in the Order at 8-9 (ER11-12), do not defeat predominance.  *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (individual questions as to amount of damages does not defeat predominance) (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975)); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (same).[14]

---

[14] The Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) does not change this conclusion.  The *Comcast* holding came from its assumption, uncontested by the parties, that in *antitrust cases* Rule 23(b)(3) requires that damages must be measurable based on a common methodology applicable to the entire class. *See id*. at 1430 (Ginsburg and Breyer, JJ., dissenting). In *Leyva*, the relevant controlling case in this Circuit after *Comcast*, the Court concluded that the presence of individualized damages does not defeat class certification under Rule 23(b)(3).  *Leyva*, 716 F.3d at 514. The *Leyva* Court concluded that *Comcast* requires only "that the plaintiffs must be able to show that

PLAINTIFFS-APPELLANTS' OPENING BRIEF

Moreover, if the court had concerns about the potential for individualized issues to predominate, including on damages, it failed to address Plaintiffs' argument concerning Rule 23(c)(4).  Rule 23(c)(4) allows class certification to be granted only "with respect to particular issues."  In their class certification briefing, Plaintiffs pointed out the availability of this provision to certify these classes with respect to liability only, as a means of achieving the efficiencies afforded by Rule 23 for tens of thousands of putative class members, without implicating any individualized issues that might arise in the damages phase of the litigation.  *See* Memo at 20 (ER247); Reply at 5 n.8, 16 (ER99, ER110).  As Plaintiffs, observed, this methodology is not uncommon.  *See Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues"); *accord In re Whirlpool Corp. Front Loading Washer Prods. Liab. Litig.,* 722 F.3d 838, 854 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) ("no matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action") (citations and alterations omitted); *McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir.

their damages stemmed from the defendant's actions that created the legal liability."  *Id.*

PLAINTIFFS-APPELLANTS' OPENING BRIEF

2012), *cert. denied*, 133 S. Ct. 338 (2012) (certifying under Rule 23(c)(4) despite individual damages issues because, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful"). Thus, to the extent that the District Court identified individualized issues related to damages as relevant to the predominance inquiry, it was plainly wrong.

Where the need for individual inquiry is uncertain, depending on the outcome of common questions, as here, it is entitled to little weight. For example, where plaintiffs may prove their claim under several different tests, the fact that individualized inquiry would be required to satisfy *one* of those tests does not defeat predominance. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 481 (C.D. Cal. 2012), *leave to appeal denied,* No. 13-80000, 2013 U.S. App. LEXIS 7023 (9th Cir. Apr. 1, 2013), *cert. denied,* 134 S. Ct. 1273 (2014). *See also Schramm*, 2011 U.S. Dist. LEXIS 122440, at *31 ("speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification"); *Otsuka*, 251 F.R.D. at 448 (individualized questions as to whether off-the-clock time was *de minimus* would only arise if common question as to applicability of that defense was decided against plaintiffs; common questions predominated).

Common questions as to the proper interpretation of the TPP Agreement have been found to outweigh hypothetical individualized inquiry in another class action involving HAMP TPP contract claims within this jurisdiction. In that case, the district court granted class certification, and this Court denied the defendant's Rule 23(f) petition for leave to appeal.[15] *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 427 (N.D. Cal. 2013) ("Plaintiff's theory of the case is that the TPP is an enforceable contract and that it contains within it all of the obligations necessary to determine breach and performance. . . . If that legal question is resolved in its favor, there are no individualized issues going to performance that remain to be addressed."); *Gaudin*, No. 13-80186 (9th Cir. Nov. 20, 2013) (*denying* Saxon's Petition for Leave to Appeal under 23(f)).  It would be anomalous for the homeowners dealing with another mortgage loan servicer to be allowed to proceed on a class-wide basis, while those bringing claims against Citi—arising from nearly identical form contracts—are denied that same procedural opportunity.

> ### 3. Consideration Of The Appropriate Legal Principles Governing Contract Interpretation Makes Clear That Common Questions Predominate

Because this case hinges on the interpretation of uniform contract

---

[15] In *Gaudin*, the court certified a class of California borrowers who entered into HAMP TPPs with Saxon, made at least three trial period payments, but did not receive HAMP loan modifications.

- 33 -

provisions, it is well-suited to class treatment. *See Nat'l Coal. of Assn's of 7-Eleven Franchisees*, 2000 U.S. App. LEXIS 864, at *9 (the interpretation of a uniform contract provision is a question of law that can and should be resolved for all class members in a single action). This Court has already decided that the TPP is a binding contract:

> The district court should not have dismissed the plaintiffs' complaints when the record before it showed that the bank had accepted and retained the payments demanded by the TPP, *but neither offered a permanent modification, nor notified plaintiffs they were not entitled to one, as required by the terms of the TPP.*

*Corvello*, 728 F.3d at 880 (emphasis added).

The basis for the *Corvello* holding (acceptance of performance) demonstrates that the TPP Agreement is subject to uniform black letter principles of contractual construction. *See also Wigod v. Wells Fargo Bank*, *NA*, 673 F.3d 547 (7th Cir. 2012) (applying principles of contract construction to the TPP); *Young*, 717 F.3d at 224 (same).

At the merits stage, the application of each of those principles will be a common question that can be most efficiently answered for the class as a whole. And, under *United Steel*, the predominance of these common questions must be considered, rather than hypothesizing individual questions that may arise depending on the resolution of those questions.

PLAINTIFFS-APPELLANTS' OPENING BRIEF

Although the actual result on the merits of application of these principles need not be resolved to certify a class, the relevant class-wide questions whose answers would preclude individual inquiry, in whole or in part, are as follows:

First, the District Court failed to consider Plaintiffs' argument that the MED could *not* be extended except in writing.   It is an established principle of contract interpretation that form contracts are integrated documents, excluding introduction of parol evidence:

> [W]here a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an ***integrated agreement*** with respect to the terms included in the writing.

Restatement (Second) of Contracts § 211 (1981) (emphasis added).  *See also Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429 (N.D. Cal. Apr. 2, 2012). Indeed, Plaintiffs presented evidence that this is the law in each state in which they seek to certify a class. ER80-82. To the extent that there is any dispute over whether the TPP Agreements are integrated contracts, this is a common legal question with a common answer.

Second, the statue of frauds governs the TPP Agreements at issue in the states for which class certification is sought.  *See, e.g., Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999) ("[T]he mortgage contract in the instant case falls

within the Statute of Frauds . . . and strict enforcement of the Statute of Frauds should apply to prevent the admission of parol evidence inconsistent with the terms of the contract.") *See* ER80-82 (state survey presented to the District Court on statute of frauds). Citi itself has argued that the TPP Agreements at issue in this case are covered by the statute of frauds and, indeed, won dismissal of some claims based on that argument. Orders Granting in Part and Denying in Part Mots. to Dismiss at ER551-552; at ER403; Def. Mems. in Support of Mots. To Dismiss at ER595-596, 612-613; at ER572-574; at 522-523, 531-536; at 410, 415-419.  Given the uniform language of the TPP Agreements with respect to Citi's deadline to act, it is a common question whether purported oral extensions or modifications of the TPP Agreements are legally permissible in any circumstances.

Moreover, had the court concluded, consistent with Plaintiffs' position, that only bilateral and timely written extensions are permitted, the court also had ample evidence to conclude that such extensions are represented as data points in Citi's records.  Reply Report of Dr. Ian Ayres ("Ayres Reply"), ¶ 37 (ER754-755).  As the Plaintiffs' expert opined, data reflecting proper written extensions of the MED can be used on a common basis to properly identify individuals who did not receive timely decisions (based on the adjusted date) as well as to base the calculation of delay damages accurately off the date of Citi's breach. Ayres Reply

Report, ¶¶ 8, 37 (ER738-739, ER754-755). This same data could be used to identify borrowers who might be properly omitted from the class on the basis of a bilateral written extension.

Third, there is an estoppel or waiver under the plain language of the contract. Each TPP Agreement provides that, "[i]f prior to the Modification Effective Date . . . the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate." TPP at p. 2, § 2.F.(iii) (ER285). Plaintiffs assert that under the most appropriate interpretation of this contract provision, once the MED passes, Citi loses the right to assert that the homeowner's representations are not true and correct, including the representations concerning the documentation requirements. *See, e.g., Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) (when the language of a contract is clear and not absurd, it will be followed). *See also Adams v. Kastner*, 92 Fed. Appx. 507, 511 (9th Cir. 2004) ("'[i]f . . . a contract is clear and explicit, involves no absurdity, and contains no ambiguity or uncertainty, it will be interpreted and the intention of the parties ascertained solely from the language employed"') (citation omitted). *See also Beanstalk Grp. v. AM Gen. Corp.*, 283 F. 3d 856, 860 (7th Cir. 2002) (a contract will be interpreted literally unless doing so will produce absurd results).

- 37 -

In light of this plain language in the TPP Agreement, once Citi's right to determine the validity of the homeowner's representations expires by passage of its deadline to act, the purported individual questions that the District Court asserts are relevant, such as changes to homeowner income, evaporate. Again, under *United Steel*, the court cannot simply assume that this common legal principle would not supply a common legal answer to justify its decision on the individual factual inquiry that would result from a finding adverse to Plaintiffs' theory.

Fourth, Citi accepted performance after the MED from class members in the form of ongoing payments in the trial period amount. It is black letter contract law that by accepting a counterparty's ongoing performance (here trial payments in the amount required by the TPP Agreement) after its own contractual deadline to perform, Citi waived its right to assert that the homeowners failed to meet any conditions precedent in the contract. *See* Restatement (Second) of Contracts, §§ 84, 246 (1981); Williston on Contracts (3rd) § 63:9 (1979).[16]  This too is a contract principle that, as a predicate question to whether Citi can assert homeowner breaches, obviates the individual issues that the District Court concluded predominate.

---

[16] Relevant state law is uniform on this issue and consistent with the restatement. ER76-78.

Fifth, every class member was damaged, in ways that are cognizable under the law of contracts by Citi's delayed performance, including, without limitation, by accrued interest charges, fees and costs that were placed on their accounts in the time period between the MED and the later date on which Citi ultimately rendered a decision on whether to grant permanent modification. Expert opinion establishes that those assessments can be identified by algorithm, using common procedures, from among the charges in each homeowner's account records.[17] *See, e.g., Abdullah,* 731 F.3d at 966–67 (rejecting defendant's predominance argument because "[i]n light of [defendant's time] records, it would not be difficult to determine [defendant's] liability to individual plaintiffs [for failure to provide meal breaks], nor would it be overly-burdensome to calculate damages"); *Leyva*, 716 F.3d at 514 (defendant's "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim . . . [so that] damages could feasibly and efficiently be calculated once the common liability questions are adjudicated").  The existence of a common basis for delay damages is thus also a potential common answer to the common question that contributes to a finding of predominance.

---

[17] Even if the court concludes that there are no compensable economic damages, black letter contract law recognizes a common right to nominal damages. *See, e.g., Midland Pac. Bldg.  Corp. v. King*, 157 Cal. App. 4th 264, 275 (2007) ("in the absence of a showing of actual damages, nominal damages are available").

- 39 -

Finally, it is possible that the District Court could have concluded that, as a matter of law, there is no contractual deadline for Citi's performance whatsoever. "No" would also be a common answer that eliminates individual questions about homeowner performance.

Each of these predicate questions of contract law and contract interpretation can be answered in common for the proposed classes.  In turn, each would, if answered in Plaintiffs' favor, obviate the need for the purported individual determinations that concerned the District Court. Failure to consider them was manifest error.

> **4.    The Individuating Inquiries That The District Court Identifies Are Irrelevant, Not Supported By The Record Or Would Be Rendered Unnecessary In Light Of The Likely Answer To A Logically Antecedent Common Legal Question**

The District Court's decision on predominance is based on acceptance of the mere assertion, made by Citi in various parts of its argument, that the MED set forth in each class member's contract "may also have been affected by the parties' course of conduct, changes in income, inaccurately or incompletely reported income, oral and written representations regarding documentation still needed and other modification options, applicable Treasury Directives, and other considerations."  Order at 8 (ER11).  The District Court does not cite a single

- 40 -

provision of the TPP Agreement or any principle of contract interpretation under which the factors it lists would override the express contractual deadline for Citi to act.[18]

Moreover, these assertions are hard to understand as the TPP Agreement, an integrated written contract subject to the statute of frauds, provides a uniformly calculable date for Citi's performance: the MED. As discussed above, nothing about "the course of conduct" changes that date absent a further written agreement. *See* p. 22, *supra*. Neither Citi not the District Court explains how "changes of income," or "inaccurately or incompletely reported income," would affect in any way the identified common question of whether Citi breached by failing to act by a deadline that allowed it to grant *or deny* a permanent modification. If changes of income that occurred during the trial period affected eligibility for a permanent modification, positively or negatively, that change was required under the TPP to have been evaluated before the MED. If the borrower no longer qualified, denial was required. If the change happened *after the MED*, it was contractually

---

[18] Indeed, the individual analysis the court considers predominant seems more relevant to a different common question than the one that the court identified, *i.e.*, whether putative class members were entitled to a permanent modification at the MED. Plaintiffs have not sought to certify a class on that theory.

- 41 -

irrelevant.[19] To the extent that there is a valid concern about "inaccurately or incompletely reported income," Citi's contractual opportunity to underwrite that question ended on the MED.  TPP at p. 2, § 2.F.(iii) (ER285). To the extent income reporting was inaccurate or the relevant documentation was incomplete, timely denial of a permanent modification was not just required, it was, for the reasons discussed above, essential to avoid delinquency charges, negative credit reporting and to allow homeowners to consider their other options. *See* p. 13, *supra*.

Issues about: (i) the "oral and written representations regarding documentation still needed;" and (ii) "applicable Treasury Directives" are properly addressed by application of the parol evidence rule, the statute of frauds, and various doctrines supporting waiver for the reasons discussed above.  *See* p. 35-38, *supra*.  Citi had two choices to the extent more documents were legitimately needed.  It could timely deny the permanent modification subject to reversing the denial if more information was supplied, or it could reach a timely written

---

[19] Evaluation of a borrower's circumstances as they exist after the MED is inconsistent with the primary purpose of having a trial period at all, *i.e.*, to provide a finite underwriting period for Citi. Underwriting is, by necessity, a snapshot of the borrower's qualifications, not a moving picture, because its purpose is to predict the borrower's ability to make future payments as of a given point in time. Under Citi's view no modification would ever be "permanent" because a change in income could always take place.

agreement with the borrower to extend the MED.  There is no evidence in the record that Citi did either.

Finally, the District Court's statement that unspecified "other modification options" and "other considerations" affect predominance is also unexplained, unsupported and speculative at best. What the court means is far from clear, but it is hard to fathom how "other modification options" or "other considerations" could have changed the applicable contractual deadline.

     **5.    The District Court's Conclusions On Predominance Are Not Supported By The Factual Record, And The Court Erred By Accepting Factual Assertions In Citi's Briefs That Were Not Rooted In The Record**

The standard for adequacy of factual findings in the Ninth Circuit is "whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision." *In re Bradford*, 112 B.R. 347, 353 (9th Cir. 1990) (citing *Louie v. United States*, 776 F.2d 819, 822–23 (9th Cir.1985)).

The District Court reached its summary conclusion on predominance without making any specific findings about the class-wide evidence Plaintiffs put forth.  For instance, the court's opinion wholly ignored Plaintiffs' waiver argument tied to Citi's class-wide data on payment histories, as described above at p. 22.

Ayres Report" ¶¶ 76-77 (ER167-168); Ayres Reply ¶ 31 (ER750-751). Similarly, as discussed above at p. 36, to the extent the court rules, on a common basis, that there were proper extensions of the MED consistent with the law of contracts, Citi's data on those extensions would allow an expert to adjust both the formula for identifying class members and his damage model based on the revised MED. Ayres Reply, ¶¶ 8, 37 (ER738-739, ER754-755). The District Court makes no findings about this evidence at all.

In its briefing and oral argument on class certification, Citi has also gone to great lengths to justify its actions with regard to various Named Plaintiffs, but conveniently omits critical facts.  Most telling, Citi baldly asserts a number of different MED extensions involving the Named Plaintiffs, but omits the dates and circumstances of those extensions. Memorandum in Opposition to Plaintiffs' Motion for Class Certification ("Opp'n") at 8 (ER790).  In fact, each of those extensions occurred months after the applicable MED in the particular Plaintiff's TPP or were unilateral non-written extensions noted in Citi's records (which may not have even been communicated to the Plaintiff Declaration of David E. Azar in Support of Plaintiffs' Reply in Support of Motion for Class Certification ("Azar Reply Dec."), ¶ 15 (ER68).   Similarly, the varied reasons that Citi now provides to justify its late denials are only relevant to Named Plaintiffs' claims if Plaintiffs fail

on the merits of their primary legal argument that Citi was required to act by the MED. Consideration of Citi's post-MED decisions begs the core question that Plaintiffs seek to have certified for class treatment and which was identified by the court as meeting the commonality requirements of Rule 23(a)(2).

### C.    The District Court Committed Legal Error By Failing To Analyze All The Elements Of Rule 23(a) And Rule 23(b)(3)

The District Court opinion addresses only one of the four requirements of Rule 23(a), ignoring numerosity, typicality, and adequacy. The District Court also failed to analyze the superiority requirement of Rule 23(b)(3). This falls short of the requirement of rigorous analysis. *See Cortez v. Saia Motor Freight Line, Inc.,* 399 Fed. Appx. 246, 247 (9th Cir. 2010) (holding that the district court erred in denying class certification when it failed to explain its reasons for denial, did not discuss all prongs of Rule 23(a) and (b), and its "conclusory assertion" that there is no commonality "falls far short of the 'rigorous analysis' required in the class-certification context"). As the requirements for class certification have long been found to be interconnected and interrelated in many respects,[20] failure to make

---

[20] *See, e.g., Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements

- 45 -

findings and conclusions with respect to each class certification requirement also undermines, *inter alia*, this Court's opportunity for comprehensive review. These issues were extensively briefed below. Memo at 9-25 (ER836-852). At a minimum, either this Court should assume that the District Court found for the Plaintiffs on the class certification elements that it failed to address in the Order or remand is necessary for more complete review.

### D. The District Court Committed Legal Error By Failing Meaningfully To Analyze Whether Plaintiffs' Non-Contract Claims Are Amenable To Class Treatment

In large part because of JPML consolidation, this is a complex matter, involving claims under the statutes and common law of the several states where Plaintiffs independently brought the claims that were consolidated by the JPML at Citi's request.   The District Court appears to have unfairly ignored the non-contract claims and their state law support.  This is particularly egregious to the extent that such claims, including those arising under state consumer protection law, stand independently of applicable contract law.

Multidistrict litigation that consolidates class actions involving state claims typically requires legal analysis of each state claim in light of the classes asserted. Although laborious, other courts tasked with class certification in such cases have

therefore also tend to merge with the adequacy-of-representation requirement . . . .").

rigorously conducted claim-by-claim analysis. *See, e.g., In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 69-75 (D.N.J. 2009) (granting class certification pursuant to Rule 23 in multidistrict litigation after lengthy choice of law analysis of six states and applying the choice of law tests used by those states to each cause of action); *In re Pharm. Indus. Average Wholesale Price Litig.,* 252 F.R.D. 83, 93 (D. Mass. 2008) (granting class certification pursuant to Rule 23 in multidistrict litigation after thorough analysis of multiple state laws and finding that "[d]ifferences among applicable state laws are not necessarily fatal to certification of a proposed class action"). *See also Tait*, 289 F.R.D. at 481 (state-by-state and claim-by-claim analysis in a case that was not consolidated by the JPML).

Here, the District Court not only rejected the parties' request for extra pages to provide comprehensive briefs,[21] its decision makes no meaningful findings of any kind with respect to many of the borrowers' claims, including promissory estoppel, breach of the implied covenant of good faith and fair dealing and state

---

[21] On April 11, 2013, the parties jointly requested that the District Court allow them additional pages for their class certification briefing because of the complexity of the issues, the number of claims involved, and then newly relevant decisional law. Plaintiffs requested ten additional pages (for a total of 35) for their opening brief and five additional pages for their reply (for a total of 25 pages) and Citi requested an additional 15 pages for its opposition (for a total of 50). ER312-321. The court summarily denied the parties' request the next day. ER307-311.

consumer protection violations.  The Opinion does not even mention the CCRAA

and state fair debt collection claims, for which certification was also sought. That

failure requires reversal or remand to allow for the review required by Rule 23.

The District Court's specific findings on all of the non-contract issues are

limited to the following sentence:

> Individual representations made by Citi to individual plaintiffs are critically important in determining whether, under the state law of each proposed class, for example, reliance was reasonable, whether a reasonable consumer would be likely to be deceived, and whether the promise was clear.

Order at 8 (WE11).

It is unclear what type of individual representations the District Court is

concerned about and which state law claims they might impact.  "Reasonable

reliance" is not generally relevant to state consumer protections claims.[22]  *See,*

*e.g., Lee v. Carter-Reed Co.*, 4 A.3d 561 (N.J. 2010); *Iannachino v. Ford Motor*

*Co.*, 888 N.E.2d 879 (Mass. 2008); *Davis v. Powertel, Inc*., 776 So. 2d 971 (Fla.

Dist. Ct. App. 2000); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996);

---

[22] In the context of securities class actions brought under Securities and Exchange Commission Rule 10b-5, the Supreme Court recently reminded district courts that the mere presence of individualized issues does not necessarily mean that Rule 23 predominance requirement is not met.  *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2412 (2014) (noting that even where individualized questions of reliance remain in the case, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)).

*State ex rel. Miller v. Hydro Mag. Ltd.*, 436 N.W.2d 617 (Iowa 1989); *State v. Andrews*, 533 A.2d 282 (Md. Ct. Spec. App. 1987). Nor do any of the claims at issue require an individual subjective test for the deceptiveness of written representations. *See, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Commonwealth v. TAP Pharm. Prods., Inc.*, 36 A.3d 1197, 1255-56 (Pa. Commw. Ct. 2011); *Miller v. Am. Family Publishers*, 663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995). Finally, both (i) the claims for breach of the implied covenant of good faith and fair dealing, for residents of three states,[23] and (ii) claims under applicable consumer protection acts, for residents in six states,[24] arise from Defendant's failure to design and implement procedures sufficient to meet its obligations to make timely decisions under TPP Agreements, particularly in light of the limited shelf life of the documents it collected from homeowners. It is unclear how individual representations are relevant in any way to those claims.

### E. The District Court Committed Legal Error By Summarily Denying Plaintiffs' Request For Certification Under Rules 23(b)(1) And 23(b)(2)

The District Court failed to offer any meaningful analysis of certification

---

[23] California, Florida and Iowa. *See* ER57.
[24] California, Florida, Illinois, Maryland, Massachusetts, and New Jersey. *See* ER269-272.

under Rule 23(b)(1) or 23(b)(2),[25] after rebuffing Plaintiffs' requests for a

relaxation of the page limits, in part to expand on those arguments.  *See* n.21,

*supra*.   Plaintiffs continue to assert that certification is appropriate under those

sections of Rule 23.

### 1.    The District Court Failed To Appropriately Consider Certification Of 23(b)(1) Class

Under Rule 23(b)(1), a class action may be maintained if prosecuting

separate actions by individual class members would create a risk of individualized

adjudications that, as a practical matter, would be dispositive of the interests of

other putative class members or would substantially impair their ability to protect

their interests. *See* Fed. R. Civ. P. 23(b)(1); *see also Kanawi v. Bechtel Corp.*, 254

F.R.D. 102, 111 (N.D. Cal. 2008); *Ashker v. Governor of Cal.*, No. C 09-5796 CW,

2014 U.S. Dist. LEXIS 75347, at *3-4 (N.D. Cal. June 2, 2014) (Rule 23(b)(1)

class of ten inmates pursuing 8th amendment claims related to solitary confinement

certified).

Here, the resolution of Plaintiffs' claim would be dispositive of other

similarly situated homeowners because a decision interpreting the form TPP

---

[25] Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists for either subsections (b)(1) or (b)(2).  *See Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

- 50 -

Agreement would require Citi to treat all similarly situated homeowners in a consistent manner. *See Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 495-96 (N.D. Cal. 2010); *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008); *Savani v. Wash. Safety Mgmt. Solutions, LLC*, No. 1:06-2805-MBS, 2012 U.S. Dist. LEXIS 62107 (D.S.C. May 2, 2012) (adjudications with respect to individual class members would establish incompatible standards of conduct for the pension plan administrators and as a practical matter, would be dispositive of the interests of the other class members, and would substantially impair the class members' ability to protect their interests); *In re J.P. Morgan Chase Cash Balance Litig.,* 242 F.R.D. 265, 275-76 (S.D.N.Y. 2007) (certifying class under Rule 23(b)(1)(A) where failure to certify could result in incompatible standards of conduct for the administrator of the plan).

Rule 23(b)(1) certification is appropriate in light of the risk of inconsistent adjudications. A certified class of homeowners under (b)(1) would insure that all homeowners who were parties to a form TPP Agreement with Citi would receive the same result and eliminate the risk of opposing outcomes – the goal of 23(b)(1). A review of recent decisions regarding TPP mortgage litigation demonstrates that courts reviewing virtually identical TPPs reach opposite results. Some courts, as did the court below in this case, find that a claim for breach of contract under the

TPP exists.  *In re Citimortgage, Inc.,* No. ML 11-2274 DSF (PLAx), 2012 U.S. Dist. LEXIS 67056, at *10 (C.D. Cal. Apr. 17, 2012) ("Whether or not Defendant subjectively viewed submission of a TPP by a borrower as an 'application' with no binding effect, an objective reading of the actual language of the TPP is at least arguably inconsistent with that view. The TPP strongly suggests to the borrower that if the borrower complies with the terms of the TPP, the borrower will receive a permanent modification. In fact, that's what the very first sentence of the TPP says . . . ."); *Ortega v. Wells Fargo Bank, N.A.*, No. 3:11CV01734, 2012 U.S. Dist. LEXIS 11409, at *20-21 (N.D. Ohio Jan. 31, 2012) ("[D]efendant's minimum obligation under the TPA was to provide some response in writing indicating its decision on the application. An obligation to provide a decision indicates an obligation to decide, however that decision was made. The viable claim here is thus not the defendant's failure to provide a modification (for the plaintiff was not entitled to that), but the defendant's failure to provide a decision in a timely fashion."); *In re JPMorgan Chase Mortg. Modification Litig.,* 880 F. Supp. 2d 220, 235 (D. Mass. 2012) ("Absent clearer direction from the California state courts, the contract claims based on California law will not be dismissed.")  Other courts conclude just the opposite.  *Ortiz v. America's Servicing Co.*, No. EDCV 12-191 CAS (SPx), 2012 U.S. Dist. LEXIS 82092, at *9 (C.D. Cal. June 11, 2012) ("The

Court finds that plaintiff's breach of contract claim should be dismissed. The plain language of the HAMP trial plan belies plaintiff's allegation that a binding contract exists . . . ."); *Grill v. BAC Home Loans Servicing LP,* No. 10-CV-03057-FCD/GGH, 2011 U.S. Dist. LEXIS 3771, at *10-11 (E.D. Cal. Jan. 13, 2011) (analyzing nearly identical language from a HAMP trial plan and dismissing plaintiff's breach of contract claim because it "makes clear that providing the requested documents was simply a part of the application process, which plaintiff was willing to complete in the hope that BAC would modify his loan"); *Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App. 4th 1499, 1504 (2011) ("As a matter of law, there was no contract here. The plain and clear language of paragraph 2G states that the Plan 'is not a modification of the Loan Documents' and the documents will not be modified unless the [plaintiffs] 'meet all of the conditions required for modification,' including the [plaintiffs'] receipt of a 'fully executed copy of a Modification Agreement.'")

As such, certification under Rule 23(b)(1) is appropriate. It was improper for the court to fail to evaluate the argument presented under Rule 23(b)(1) on its merits.

### 2. The District Court Erred When It Failed To Certify A 23(b)(2) Class

Rule 23(b)(2) provides that "a class action may be maintained if Rule 23(a)

is satisfied and if : . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

During oral argument, Plaintiffs pointed out that they were asking the District Court to make a determination about whether the TPP requires Citi to determine an outcome for each class member by the MED. *See* Reporter's Transcript of Proceedings – Monday, September 16, 2013 at 11-13 (ER24-26). This determination is the declaratory relief Plaintiffs seek.

A declaration as to the class members' rights under a uniform contract is appropriate for certification under Rule 23(b)(2). *See, e.g.*, *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 674 (S.D. Fla. 1997) (allowing action to proceed under (b)(2) where plaintiffs were "primarily seeking a declaration of their rights to coverage" under certain insurance policies). Certification under Rule 23(b)(2) is appropriate even where the declaration is a prelude to monetary relief. As Judge Posner has explained:

> [A] declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary. . . . The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration. As long as the concrete follow-on relief that is envisaged will if ordered (that is, if negotiations for relief consistent with the declaration break down) be

the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2).

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003).

A class can be certified under Rule 23(b)(2) even when monetary relief is sought when "[money] damages . . . flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). That is, "if damages could be calculated formulaically, the class should [be] certified under 23(b)(2)." *In re Conseco Life Ins. Co.*, No. C 10-02124 SI, 2011 U.S. Dist. LEXIS 146139, at *22 (N.D. Cal. Dec. 20, 2011) (denying in part motion for decertification for current insurance policyholders, stating that (b)(2) certification was proper because formula could be implemented using computer data to determine wrongfully charged costs and fees); *see also Allison*, 151 F.3d at 415 ("[D]amages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.")[26]

---

[26] In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2557, the Supreme Court held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." "The Court

Here, the District Court did not dispute the general applicability of Defendants' conduct to the class or that declaratory or injunctive relief is appropriate to the class as a whole. Instead, the court held that, "[a]s evidenced by the motions for summary judgment," Order at 7, "[a]n individualized inquiry" would be necessary to determine whether Citi "may have properly assessed certain interest, fees, and other charges." *Id.*

The District Court did not address evidence that an algorithm could be applied uniformly to Citi's account records to calculate the incidental damages owed to the class.  Ayres Report, ¶ 88 (ER173-174); Ayres Reply ¶¶ 39, 40 (with example at Appendix 2) (ER756-757, 759-773).  Based on this evidence, "[s]eeking return of wrongfully charged costs and fees of this sort will not require additional hearings to resolve the disparate merits of each individual's case."  *In re Conseco*, 2011 U.S. Dist. LEXIS 146139, at *26.

Similarly, in *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012), Judge Posner, writing on behalf of a unanimous Seventh Circuit, affirmed the district court's grant of certification despite

---

[however] left open the possibility that 'incidental' monetary claims could be brought in a Rule 23(b)(2) class action . . . ."  *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) (citing *Dukes*, 131 S. Ct. at 2560-61); *In re Conseco Life Ins. Co.*, 2011 U.S. Dist. LEXIS 146139, at *14 ("While stripping claims for *individualized* monetary relief from the aegis of 23(b)(2) classes, *Wal-Mart* left open the possibility that some claims for monetary relief may still be permitted.")

- 56 -

arguments by defendants that the existence of ten different subclasses necessitated individualized money damages determinations.  Judge Posner specifically held the following:

> Should it appear that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so there is no need for notice and the concerns expressed in the *Wal-Mart* opinion are thus not engaged, the district court can award that relief without terminating the class action and leaving the class members to their own devices and also without converting this (b)(2) class action to a (b)(3) class action.

*Id.* at 372; *see also Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2014 U.S. Dist. LEXIS 87692, at *10 (S.D.N.Y. June 26, 2014) ("Plaintiffs quite clearly satisfy Rule 23(b)(2) . . . . This . . . failure to act . . . applies uniformly to the class and the requested declaration would apply equally to all the class members, notwithstanding the fact that the individual inputs into the remedy calculation would differ.")

In *Johnson*, Judge Posner further reasoned that in the alternative, the district court can "bifurcate" certification, with "a (b)(2) proceeding first, and if the plaintiffs obtain declaratory relief a (b)(3) proceeding (where notice and the right to opt out are mandatory) to follow."  *Id.* at 371; *see also Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429-30 (6th Cir. 2011) (finding nothing "objectionable" about "certifying declaratory relief under Rule 23(b)(2) . . . even

when the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)").

Consequently, the District Court erroneously failed to certify, under Rule 23(b)(2), the threshold declaratory question—whether pursuant to the TPP Agreement, Citi was required to render a yes or no decision by the MED. If the answer is in the affirmative, any incidental monetary damages that flow therefrom will be calculated mechanically by the aforementioned algorithm. Thus, the District Court's decision to deny class certification under Rule 23(b)(2) was erroneous and should be reversed.

### F.    In The Alternative, Remand Is Required With Instructions To Engage In More Rigorous Analysis Consistent With The Precedents Of This Court

Courts of Appeal regularly remand cases where class certification was denied on the basis of insufficiently rigorous analysis. *See, e.g., In re Sandusky Wellness Center, LLC,* No. 14-0301, 2014 U.S. App. LEXIS 12093 (6th Cir. June 12, 2014); *Ealy v. Pinkerton Gov't Servs., Inc.,* 514 Fed. Appx. 299, 306-307 (4th Cir. 2013); *Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 66 (1st Cir. 2010) (Souter, J.) ("Although the district court's fact finding was too sparse to provide a prudent basis for us to say that a class should have been certified, we can say that plaintiffs presented substantial evidence of predominating common issues that

called for a searching evaluation.")  The District Court's opinion on class

certification is simply too conclusory to enable an appellate court to determine the

grounds on which it reached its decision on several claims. At a minimum, remand

with appropriate instructions is required.

## VII.  CONCLUSION

For the foregoing reasons, the District Court's denial of class certification

should be reversed, or, in the alternative, the matter should be remanded with

instructions to the District Court.

### STATEMENT OF RELATED CASES

Plaintiffs/Appellants are <u>not aware</u> of any related case pending in this Court.

However, a Fed. R. Civ. P. 23(f) Petition for Permission to Appeal of the

following related case was recently denied by this court, while this matter was

pending. *Gaudin v. Saxon Mortgage Services, Inc.*, 9th Circuit No. 13-80186,

Northern District of California D.C. No. 3:11-cv-01663-JST. In *Gaudin*, a case

alleging a servicer's failure to honor the terms of Trial Period Plan Agreements,

the District Court granted certification of a California class.  This court denied the

servicer's Permission to Appeal on November 20, 2013, and the case is now

pending in the District Court for a certified class.

Date:  August 18, 2014        MILBERG LLP
DAVID E. AZAR
NICOLE M. DUCKETT


*s/ David E. Azar*
DAVID E. AZAR

300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
dazar@milberg.com
nduckett@milberg.com

MILBERG LLP
ARIANA J. TADLER
PEGGY J. WEDGWORTH
1 Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile: (213) 868-1229
atadler@milberg.com
pwedgworth@milberg.com

KLEIN KAVANAGH COSTELLO, LLP
GARY KLEIN
KEVIN COSTELLO
85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone: (617) 357-5500
Facsimile: (617) 357-5030
klein@kkcllp.com
costello@kkcllp.com

WESTERMAN LAW CORP.
JEFF WESTERMAN
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 698-7450
Facsimile: (310) 201-9160
jwesterman@jswlegal.com

*Counsel for Plaintiffs - Appellants*

- 60 -

## STATEMENT OF RELATED CASES

Date:  August 20, 2014

MILBERG LLP


_____
              *s/ David E. Azar*
              DAVID E. AZAR

*Counsel for Plaintiffs - Appellants*

- 61 -

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 13,755 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.

Date:  August 18, 2014

MILBERG LLP


_____
*s/ David E. Azar*
DAVID E. AZAR

*Counsel for Plaintiffs - Appellants*

PLAINTIFFS-APPELLANTS' OPENING BRIEF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

☐ I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

☒ Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following participants listed on the attached Service List.


                                         */s/ Jennifer A. Conte*
                                         JENNIFER A. CONTE


- 63 -

**CitiMortgage**
9th Circuit No. 13-57158

| 1. LEAD COUNSEL FOR APPELLANTS (PLAINTIFFS) | |
|---|---|
| David Azar<br>Nicole Duckett<br>**MILBERG LLP**<br>One California Plaza<br>300 S. Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile: (213) 617-1975<br>dazar@milberg.com<br>ndfricke@milberg.com | **Counsel for Plaintiffs: Beverly King, Nancy Glennon, Audrey Pierson, Hugh Pierson**<br>C.D. California, No. 2: 10-cv-03792-DSF-PLAx |
| MILBERG LLP<br>ARIANA J. TADLER<br>PEGGY J. WEDGWORTH<br>1 Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (213) 868-1229<br>atadler@milberg.com<br>pwedgworth@milberg.com | |
| Gary Klein<br>Shennan Kavanagh<br>Kevin Costello<br>Marjorie Charney<br>**KLEIN KAVANAGH COSTELLO, LLP**<br>85 Merrimac Street, 4th Floor<br>Boston, Massachusetts 02114<br>Telephone: (617) 357-5500<br>Facsimile: (617) 357-5030<br>Emails: klein@kkcllp.com<br>kavanagh@kkcllp.com<br>costello@kkcllp.com<br>charney@kkcllp.com | **Counsel for Plaintiffs: Davidson Calfee, Robert Gatti, Daniel Korzep, Karen Grover**<br>D. Massachusetts, No. 1:10-cv-12051-WGY |

| 2. COUNSEL FOR RESPONDENT (DEFENDANT | |
|---|---|
| Elizabeth D. Mann<br>Steven E. Rich<br>**MAYER BROWN LLP**<br>350 South Grand Avenue, 25th Floor<br>Los Angeles, CA 90071-1503<br>Telephone: (213) 229-9500 | **Counsel for CitiMortgage, Inc.** |

| | |
|---|---|
| Facsimile: (213) 625-0248<br>Email: emann@mayerbrown.com<br>srich@mayerbrown.com | |
| Lucia Nale (Pro Hac Vice)<br>Debra Bogo-Ernst (Pro Hac Vice)<br>Stephen J. Kane (Pro Hac Vice)<br>**MAYER BROWN LLP**<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile: (312) 701-7711<br>Email: lnale@mayerbrown.com<br>dernst@mayerbrown.com<br>skane@mayerbrown.com | **Counsel for CitiMortgage, Inc.** |
| Jeff S. Westerman<br>Jordanna G. Thigpen<br>**WESTERMAN LAW CORP.**<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 698-7450<br>Facsimile: (310) 201-9160<br>jwesterman@jswlegal.com<br>jthigpen@jswlegal.com | **Counsel for Plaintiffs: Beverly King, Nancy Glennon, Audrey Pierson, Hugh Pierson**<br>C.D. California, No. 2: 10-cv-03792-DSF-PLAx |
| Charles M. Delbaum<br>Stuart T. Rossman<br>**NATIONAL CONSUMER LAW CENTER**<br>7 Winthrop Square, 4th Floor<br>Boston, MA 02110<br>Telephone: (617) 542-8010<br>Facsimile: (617) 542-8033<br>Email: cdelbaum@nclc.org<br>srossman@nclc.org | **Counsel for Plaintiffs: Davidson Calfee, Robert Gatti, Daniel Korzep, Karen Grover**<br>D. Massachusetts, No. 1:10-cv-12051-WGY |
| Rosemary M. Rivas<br>Danielle A. Stoumbos<br>**FINKELSTEIN THOMPSON LLP**<br>505 Montgomery St., Suite 300<br>San Francisco, California 94111<br>Telephone: (415) 398-8700<br>Facsimile: (415) 398-8704<br>rrivas@finkelsteinthompson.com<br>dstoumbos@finkelsteinthompson.com | **Counsel for Plaintiffs: Hanna Bernard,** C.D. California, 2:10-cv-6292-DSF<br>**Carla Chui, Maurizio Verdini, Elizabeth Daniel,** C.D. California, 2:10cv7385 |
| Mila F. Bartos<br>**FINKELSTEIN THOMPSON LLP**<br>James Place<br>1077 30th St., N.W. | |

- 65 -

| | |
|---|---|
| Suite #150<br>Washington DC 20007<br>Telephone: (202) 337-8000<br>Facsimile: (202) 337-8090<br>mbartos@finkelsteinthompson.com | |
| Andrew J. Garcia<br>Carlin J. Phillips<br>**PHILLIPS & GARCIA, P.C.**<br>13 Ventura Drive<br>Dartmouth, MA 02747<br>Telephone: (508) 998-0800<br>Facsimile: (508) 998-0919<br>agarcia@phillipsgarcia.com<br>cphillips@phillipsgarcia.com | |
| James C. Sturdevant<br>**THE STURDEVANT LAW FIRM**<br>354 Pine Street, 4th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 477-2410<br>Facsimile: (415) 477-2420<br>jsturdevant@sturdevantlaw.com | |
| Maeve Elise Brown<br>Elizabeth S. Letcher<br>**HOUSING AND ECONOMIC RIGHTS ADVOCATES**<br>1814 Franklin Street, Suite 1040<br>Oakland, CA 94612<br>Telephone: (510) 271-8443<br>Facsimile: (510) 868-4521<br>melisebrown@heraca.org<br>eletcher@heraca.org | |
| Gene Joseph Stonebarger<br>**STONEBARGER LAW**<br>75 Iron Point Circle, Suite 145<br>Folsom, CA 95630<br>Telephone: (916) 235-7141<br>Facsimile: (916) 235-7141<br>gstonebarger@stonebargerlaw.com | **Counsel for Plaintiff: Balbir Singh**<br>E.D. California, No. 2: 11-cv-00793-KJM-GGH |
| Charles E. Schaffer<br>**LEVIN, FISHBEIN, SEDRAN & BERMAN**<br>510 Walnut Street, Suite 500<br>Philadelphia, Pennsylvania 19106<br>Telephone: (877) 882-1011<br>Facsimile:  (215) 592-4663<br>CSchaffer@lfsblaw.com | |

- 66 -

| | |
|---|---|
| Mark Richard Miller<br>**WEXLER WALLACE LLP**<br>55 W. Monroe Street *3300<br>Chicago, IL 60603<br>Telephone: (312) 346-2222<br>Facsimile: (312) 346-0022<br>rnrm@wexlerwallace.com | **Counsel for Plaintiffs: Leslie Barry, John Petrides, Maria Petrides**<br>N.D. Illinois, No. 1: 11-cv-02918 |
| Sherrie R. Savett<br>Russell D. Paul<br>Eric Lechtzin<br>**BERGER & MONTAGUE, PC**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-5715<br>ssavett@bm.net<br>rpaul@bm.net<br>elechtzin@bm.net | |
| Mark J. Tamblyn<br>**WEXLER WALLACE LLP**<br>455 Capitol Mall, Suite 231<br>Sacramento, CA 95814<br>Telephone: (916) 492-1100<br>Facsimile: (916) 492-1124<br>mjt@wexlerwallace.com | |
| Sandra W. Cuneo<br>**CUNEO GILBERT & LADUCA, LLP**<br>11620 Wilshire Boulevard, Suite 900<br>Los Angeles, CA 90025<br>Telephone:  (310) 582-5939<br>Facsimile:  (310) 582-5943<br>Email: scuneo@cuneolaw.com | **Counsel for Plaintiff Keith Goodyk**<br>Case No. 11-ml-2274-DSF |
| Jonathan W. Cuneo<br>Alexandra C. Warren<br>Brendan S. Thompson<br>Charles J. LaDuca<br>**CUNEO GILBERT & LADUCA LLP**<br>507 C Street NE<br>Washington DC 20002<br>Telephone: (202) 789-3960<br>Facsimile: (202) 789-1813<br>jonc@cuneolaw.com<br>awarren@cuneolaw.com<br>brendant@cuneolaw.com<br>charles@cuneolaw.com | **Counsel for Plaintiff: Brian Costigan**<br>S.D. New York, No. 1:10-cv-08776-SAS<br><br>**Counsel for Plaintiff: Keith Goodyk**<br>Case No. 11-ml-2274-DSF |

| | |
|---|---|
| Gerald W. Crawford<br>Nicholas J. Mauro<br>**CRAWFORD QUILTY & MAURO LAW FIRM**<br>1701 Ruan Center<br>666 Grand Avenue<br>Des Moines, IA 50309<br>Telephone: (515) 245-5420<br>Facsimile: (515) 245-5421<br>crawford@crawfordlawfirm.com<br>mauro@crawfordlawfirm.com | |
| Robert Shelquist<br>**LOCKRIDGE GRINDAL & NAUEN PLLP**<br>100 Washington Ave S., Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>Facsimile: (612) 339-0981<br>Email: rkshelquist@locklaw.com | |
| Eric D. Holland<br>Randall Seth Crompton<br>**HOLLAND GROVES SCHNELLER STOLZE**<br>300 N. Tucker Suite 801<br>St. Louis, MO 63101<br>Telephone: (877) 255-3352<br>Facsimile: (314) 241-5554<br>eholland@allfela.com<br>scrompton@allgfella.com | |
| J. Barton Goplerud<br>**HUDSON MALLANEY SHINDLER ANDERSON P.C.**<br>5015 Grand Ridge Drive, Suite 100<br>West Des Moines, Iowa 50265<br>Telephone: (515) 223-4567<br>Facsimile: (515) 223-8887<br>jbgoplerud@hudsonlaw.net | |
| Lawrence J Friscia<br>**FRISCIA & ASSOCIATES LLC**<br>17 Academy Street, Penthouse<br>Newark, NJ 07102<br>Telephone: (973) 500-8024<br>Facsimile: (888) 809-3747<br>Email: lawrence.friscia@friscialaw.com | |
| David Ian Greenberger<br>Matthew James McDonald | |

- 68 -

| | |
|---|---|
| **LIDDLE & ROBINSON LLP**<br>800 Third Avenue, 8th Floor<br>New York, NY 10022<br>Telephone: (212) 687-8500<br>Facsimile:  (212) 687-1505<br>Email: dgreenberger@liddlerobinson.com<br>mmcdonald@liddlerobinson.com | |
| Lisa J. Rodriguez<br>Nicole M. Acchione<br>**TRUJILLO, RODRIGUEZ &<br>RICHARDS, LLP**<br>258 Kings Highway East<br>Haddonfield, NJ 08033<br>Telephone: (856) 795-9002<br>Facsimile: (856) 795-9887<br>Email: lisa@trrlaw.com<br>nacchione@trrlaw.com | **Counsel for Plaintiffs: Juan Silva,<br>Elizabeth Silva Farias**<br>D. New Jersey, No. 2: 11-cv-01432-<br>WHW-CCC<br><br>**And for Plaintiff: Jo Ann<br>Gastineau**<br>D. New Jersey, No. 3: 11-cv-02773-<br>AET-TJB |
| Sherrie R. Savett<br>Russell D. Paul<br>Eric Lechtzin<br>**BERGER & MONTAGUE, PC**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile:  (215) 875-5715<br>Email: ssavett@bm.net<br>rpaul@bm.net<br>elechtzin@bm.net | **Counsel for Plaintiff: William T.<br>Whiting**<br>E.D. Pennsylvania, No. 2: 11-cv-<br>02318-ER<br><br>**And for Plaintiffs: David G.<br>DeRosa, Erin N. Logan, Janie L.<br>Glover, Minnie Glover, James A.<br>Garcia, Jennifer Garcia, Renee<br>Johnson, Stephen B. Johnson**<br>E.D. Pennsylvania, No. 2: 11-cv-<br>02914-ER |
| Janet Sue Legg<br>Scott C. Borison<br>Phillip Rease Robinson<br>**LEGG LAW FIRM, LLC**<br>Francis Scott Key Mall<br>5500 Buckeystown Pike<br>Frederick, MD 21703<br>Phone: (301) 620-1016<br>Fax: (301) 620-1018<br>legg@legglaw.com<br>borison@legglaw.com<br>probinson@legglaw.com | **Counsel for Plaintiffs: Joaquin<br>Sequeira, Ernest Lunsford**<br>C.D. California, No. 11-cv-9179-<br>DSF (PLAx) |

- 69 -